## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **COLETTE RICK**, an individual;<br>**MICHELLE RICK**, an individual; and<br>**KEITH RICK, II**, an individual;<br><br>     Plaintiffs,<br><br>v.<br><br>**TRUSTMARK NATIONAL BANK**, a national bank;<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No.: CV-2017-_____<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

As and for their Complaint against Defendant Trustmark National Bank ("Trustmark"), Plaintiffs Colette Rick, Michelle Rick, and Keith Rick, II (collectively "Plaintiffs") state as follows:

## PARTIES

1. Plaintiff Colette Rick is an adult resident of the state of Wisconsin, a beneficiary of the trust at issue in this matter, and is a citizen of Wisconsin.

2. Plaintiff Michelle Rick is an adult resident of the state of Wisconsin, a beneficiary of the trust at issue in this matter, and is a citizen of Wisconsin.

3. Plaintiff Keith Rick, II, is an adult resident of the state of Florida, a beneficiary of the trust at issue in this matter, and is a citizen of Florida.

4. Defendant Trustmark National Bank ("Trustmark") is a national bank chartered under the laws of the United States with its home office and principal place of business at 248 East Capitol Street, Jackson, Mississippi. Trustmark is, therefore, a

citizen of Mississippi.

5. Because no Plaintiff is a citizen of the same state as the Defendant, complete diversity of citizenship exists.

## JURISDICTION AND VENUE

6. This is an action for damages which exceed $75,000.00, exclusive of interest, costs, and attorneys' fees.

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as it is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the trust is administered from Defendant's branch bank in Brewton, Escambia County, Alabama, which lies within this Court's judicial district.

## FACTUAL ALLEGATIONS

9. Plaintiffs' grandfather, C. M. Jackson ("Jackson"), left a will providing for his residual estate to fund two separate trusts: the CM Jackson Marital Trust and the CM Jackson Educational Trust. Only the CM Jackson Marital Trust (the "Marital Trust") is the subject of this litigation.

10. The Marital Trust is to provide all net income to Jackson's surviving spouse, Barbara Jackson ("Barbara"), for her life. The principal of the Marital Trust is to be accessed as necessary for the health, maintenance, or welfare of Barbara. The trust further provides that, at Barbara's death, the undistributed income and remaining

principal shall be distributed to Plaintiffs.

11. Following the probate of Jackson's estate, the Marital Trust was funded and South Alabama Trust Company was appointed successor Trustee.

12. Upon information and belief, Defendant Trustmark National Bank, through one or more mergers and/or acquisitions, is the successor to South Alabama Trust Company. For the time period relevant to the facts and claims stated herein, Trustmark has served as the trustee of the Marital Trust.

13. For approximately two decades, Barbara received the income generated by the Marital Trust and it was unnecessary for the principal of the trust to be used for Barbara's health, maintenance, or welfare.

14. Upon information and belief, Barbara's son, Danny Stovall, has taken certain actions, allegedly on Barbara's behalf, based on a purported power of attorney executed in his favor.

15. In 2015, Plaintiff Colette Rick questioned Trustmark about the increased Marital Trust distributions and specifically sought information about whether those distributions were being used for Barbara's care.

16. Plaintiff Colette Rick corresponded with Trustmark's representative, Wade Gordon, regarding the increased distributions. Ms. Rick expressed her concern to Gordon that trust funds that were intended for Barbara's benefit were being used improperly for and by Barbara's family members. As part of her inquiries to Trustmark, Ms. Rick asked Trustmark what invoices, documents, or contracts it reviewed or relied on to verify or otherwise justify the increased costs.

17. Gordon responded by claiming that Trustmark had discretion in approving trust distributions. Gordon further advised Ms. Rick that, rather than review invoices or contracts, the Defendant simply issued checks to Barbara to be deposited in her checking account after Stovall paid Barbara's expenses. Purportedly, these expenses were verified on a recurring basis, but Defendant provided no explanation or description of any effort to verify whether Barbara actually received the care that the Marital Trust funded.

18. By e-mail dated July 23, 2015, Plaintiff Collette Rick requested an audit of the Trust's distributions so she could be reasonably informed about the administration of the trust and of the material facts necessary to protect her and her siblings' interest.

19. Trustmark did not provide any information, much less an audit or accounting, of the Marital Trust's distributions and did not investigate whether the Marital Trust assets were actually being used for Barbara's care.

20. Instead, Gordon advised Ms. Rick that Trustmark received an annual accounting of expenses from Stovall and reviewed Barbara's checking account statements and considered other sources of income to determine the amount of disbursements from the Marital Trust. These distributions were allegedly approved by a committee annually but Trustmark never provided any documents to Plaintiff to confirm that any such review ever took place.

21. On or around January 26, 2017, Plaintiffs received a letter from Tripp Owens, Trust Officer for Trustmark Wealth Management, a division of Trustmark, stating that the Marital Trust had made principal distributions to offset increased health-care costs over the past few years. The letter further advised that, at the current pace of

distributions, the Marital Trust would be depleted in the next five to seven years.

22. Upon receiving the letter, Plaintiff Collette Rick contacted both Trustmark's Head of Trusts and Owens's boss to relay her concerns regarding Trustmark's representative's prior responses to her inquiries about the Marital Trust distributions and the care Barbara was receiving. Owens's superior promised Ms. Rick that Owens would complete an unscheduled/unannounced visit and be responsive to Ms. Rick's inquiries.

23. Following these discussions, Plaintiff Colette Rick spoke to Tripp Owens and questioned, once again, whether the distributions were being used for Barbara's care and whether Barbara was receiving proper care. She asked Owens (on Defendant's behalf) to make an unannounced visit to confirm whether Barbara was receiving the full-time care that the Marital Trust was funding.

24. Owens advised Ms. Rick that Trustmark exercised discretion in making Marital Trust distributions and in reimbursing amounts paid by Stovall from Barbara's checking account. Owens further stated that the amounts reimbursed by the Marital Trust were verified on an annual basis and that he would visit Barbara the following week. Owens did not, however, confirm that the expenses were the result of additional care being provided to Barbara.

25. Upon information and belief, neither Owens nor any other Trustmark representative visited Barbara as promised to confirm whether Barbara was receiving proper care.

26. In a March 2, 2017, e-mail, Owens told Plaintiff Colette Rick that he had

spoken with Stovall. Rather than conduct the unannounced visit that Ms. Rick requested, Owens scheduled a meeting at Barbara's home with Barbara and Stovall's daughter the next day.

27.     Upon information and belief, that meeting did not occur and Trustmark did not verify the care the Marital Trust was funding for Barbara.

28.     Owens further advised in the same e-mail message that he had not yet been able to get a copy of the check images/bank statements displaying caretaker costs for 2016. Even though Owens did not have the check images/bank statements for 2016, beneficiary payments to Barbara and other disbursements from the Marital Trust totaled $191,925.42 at the end of 2016.

29.     Upon information and belief, Danny Stovall, who held power of attorney and had authority to handle Barbara's transactions, passed away on March 17, 2017.

30.     Barbara passed away on May 1, 2017. By its terms, the Marital Trust terminated upon Barbara's death and the undistributed income and then remaining principal was due to be distributed to Plaintiffs. To date, no such distributions have been made to Plaintiffs.

## COUNT I
### Breach of Trust

31.     Plaintiffs adopt and incorporate the preceding paragraphs as though the same were fully set forth herein.

32.     As Trustee, Defendant owed Plaintiffs a fiduciary duty to prudently administer the Marital Trust and take reasonable steps to protect the Marital Trust

property.

33. In exercising its discretion to make distributions from the Marital Trust, Defendant had the duty not to act in bad faith or beyond the bounds of reasonable judgment, but in accordance with the terms and purposes of the trust and the interests of the beneficiaries.

34. Plaintiffs specifically notified Defendant of their belief that (i) the Martial Trust was being plundered by Barbara's family, and (ii) Barbara was not receiving the care that the Marital Trust was paying for. Defendant took no action to prudently administer the Marital Trust; did not take reasonable steps to protect the Marital Trust property; did not follow its own procedures concerning the review and approval of Marital Trust distributions; and did not attempt to ascertain whether the distributions were being used for appropriate purposes.

35. Defendant willfully, wantonly, materially, recklessly, and in bad faith breached its duties by failing to ascertain, review, consider, and provide material and necessary information concerning the Marital Trust's management and distributions; distributing trust income and principal without investigation, diligence, or regard for whether the distributions were necessary or appropriate for Barbara's health, maintenance, or welfare; failing to adequately review and approve trust distributions; failing to adopt and/or follow procedures to verify that Marital Trust distributions were necessary or appropriate for Barbara's health, maintenance, or welfare; failing to consider other sources of income available to Barbara, including the rental value of her home, before making Marital Trust distributions; and otherwise distributing trust money for the

benefit of Barbara's family and at the expense of the Plaintiffs.

36.     The Defendant's breaches of these duties damaged the Plaintiffs by unnecessarily depleting the Martial Trust assets and risked the Marital Trust having insufficient assets to care for Barbara.

WHEREFORE, Plaintiffs request that this Court:

(a)     Order the Defendant to produce a complete, auditable, and accurate accounting of the Marital Trust's assets, expenses, income, and distributions that complies with generally accepted accounting principles, including but not limited to the nature and purpose of all transactions;

(b)     Order the Defendant to maintain in good order all source documents and other information relied on in preparing the above accounting, including but not limited to all receipts, vouchers, invoices, cancelled checks, and other evidence of expenses purportedly justifying Marital Trust disbursements;

(c)     Hold the Defendant responsible for, and enter a judgment in Plaintiffs' favor for, all fees and costs associated with preparing the accounting, producing the source documents, defending this action (including Defendants attorneys' fees), and prohibiting the Defendant's use of any monies associated with the Marital Trust for such payment of fees and costs;

(d)     Compel the Defendant to redress the willful, wanton, and material breach of trust by paying money and restoring the value of the Marital Trust to what it would have been had Defendant properly carried out its duties without the breaches of trust and to order Defendant to reimburse the Marital Trust for all trustee fees or other expenses or

costs paid to the Defendant;

(e) Credit the Marital Trust with all improper trust expenditures, distributions, and costs, including compensation paid to the Defendant;

(f) Distribute the Martial Trust's remaining undistributed income and remaining principal to the Plaintiffs;

(g) Award Plaintiffs reasonable attorneys' fees, costs, and expenses to be paid by the Defendant and not from the assets of the Marital Trust; and

(h) Grant such other relief as provided by law or as the Court deems just and proper.

## COUNT II
## Removal of Trustee

37. Plaintiffs adopt and incorporate the preceding paragraphs as though the same were fully set forth herein.

38. Pursuant to ALA. CODE § 19-3B-706(b), the Court may remove a Trustee that has (1) committed a serious breach of trust, or (2) persistently failed to administer the trust effectively and removal of the Trustee best serves the interests of the beneficiaries.

39. At all times relevant hereto, the Defendant stood in a fiduciary relationship with Plaintiffs in which the Defendant breached its duty of trust and persistently failed to administer the trust in accordance with its terms and applicable law and with complete disregard for Plaintiffs.

40. These acts and omissions are sufficient for immediate removal of the Trustee.

41. In addition, the Marital Trust terminated upon Barbara's death on May 1, 2017, and Defendant has failed to distribute the undistributed income and remaining principal of the Martial Trust to Plaintiffs.

WHEREFORE, Plaintiffs request that this Court enter an Order:

(a) Removing Defendant as Trustee with no release of liability for any of the claims alleged herein;

(b) Requiring the Trustee to transfer and release all Marital Trust property, accounts, equities, bonds, or other investments to the Plaintiffs;

(c) Denying compensation and reimbursement for expenses incurred in the administration of the Marital Trust, including attorneys' fees and costs incurred in the defense of this action, due to Defendant's willful, wanton, and material breach of trust;

(d) Awarding Plaintiffs reasonable attorneys' fees, costs, and expenses to be paid by the Defendant and not from the assets of the Marital Trust; and

(e) Granting such other relief as provided by law or as the Court deems just and proper.

**Plaintiffs Demand Trial by Struck Jury**

Dated this the 17th day of July, 2017.

                                      Respectfully submitted,

                                      */s/ Bryan G. Hale*
                                      Bryan G. Hale (ASB-6964-A55H)
                                      GOFORTH HALE LLC
                                      2700 Highway 280 South, Suite 320W
                                      Birmingham, Alabama 35223
                                      Phone: (205) 403-5896
                                      bhale@ghattorney.com

                     **Please serve the Defendant by Certified Mail as follows:**

Trustmark National Bank
c/o Registered Agent CT Corp. System
2 North Jackson Street, Suite 605
Montgomery, AL 36104